UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CHERI M. GAULT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:12-CV-56 |
| | ) | (PHILLIPS/SHIRLEY) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding disposition by the District Court of Plaintiff's Motion for Judgment on the Pleadings

and Memorandum in Support [Docs. 15 and 16] and Defendant's Motion for Summary Judgment

and Memorandum in Support [Docs. 17 and 18]. Plaintiff Cheri M. Gault ("Plaintiff") seeks

judicial review of the decision by Administrative Law Judge ("ALJ"), the final decision of the

Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On November 28, 2005, the Plaintiff filed an application for a period of disability,

disability insurance benefits, and/or supplemental security income, claiming a period of

disability which began on May 1, 1982. [Tr. 37, 129]. After her application was initially denied

and denied again upon reconsideration, the Plaintiff requested a hearing. [Tr. 101]. On January 6,

1

2009, a hearing was held before an ALJ to review the Plaintiff's claim. [Tr. 896-922]. On July 31, 2009, the ALJ found that the Plaintiff was not disabled.

The Appeals Council accepted the Plaintiff's request for review and vacated and remanded the case to the ALJ. [Tr. 68-70]. Contrary to the ALJ's decision, the Appeals Council determined that the Plaintiff's previous job as a housecleaner was not past relevant work because she did not earn the required $740 per month to constitute substantial gainful activity. [Tr. 69]. The ALJ held a second hearing on August 31, 2010, [Tr. 923-39], and on September 24, 2010, she found that the Plaintiff was not disabled. [Tr. 19]. The Appeals Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner.

The Plaintiff now seeks judicial review of the Commissioner's decision.

I.      **ALJ FINDINGS**

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2006.

2. The claimant has not engaged in substantial gainful activity since May 1, 1982, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: abdominal and pelvic pain, depression, anxiety, bipolar disorder, borderline personality disorder, post traumatic stress disorder (PTSD), and a history of drug and alcohol dependence (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR

2

404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(b) except she must avoid hazards and can occasionally balance. She has a mild, or limited but satisfactory, ability to complete a normal work week and accept instructions and criticisms appropriately. She requires work where she does not deal with (in other words, where she has no interaction with) the public on a regular basis, and where she basically deals with as few people as possible; that is low stress, and is fairly repetitive, not requiring a great deal of concentration.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 1, 1975 and was 7 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 1982, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 13-18].

## II.    DISABILITY ELIGIBILITY

To qualify for SSI benefits, a plaintiff must file an application and be an "eligible individual" as defined in the Act.  42 U.S.C. § 1382(a); 20 C.F.R. § 416.202.  An individual is eligible for SSI if he has financial need and he is aged, blind, or under a disability.  <u>See</u> 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1.  If claimant is doing substantial gainful activity, he is not disabled.

2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At step five, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III.   STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

5

support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was

6

supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard.  See id. at 547.

On review, Plaintiff bears the burden of proving her entitlement to benefits. Boyes v. Sec'y of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.     POSITIONS OF THE PARTIES

The Plaintiff argues, generally, that the ALJ improperly considered the opinions in the record. [Doc. 16 at 15]. The Plaintiff presents three specific allegations of error. She alleges the ALJ erred by: (1) failing to properly acknowledge Tracy Allred's, Ed.D., assessment; (2) failing to consider and explain the weight given to Alex Alexander's, M.D., and Lynn White's, L.C.S.W., opinions; and (3) discounting Dr. Alexander's and Ms. White's opinions. [Id. at 16, 21].

The Commissioner responds that "given Dr. Allred's clinical findings, substantial evidence supports the ALJ's mental RFC findings." [Doc. 18 at 5]. The Commissioner contends that Dr. Allred's opinion is not entitled to great deference and that the final decision on whether the Plaintiff is impaired rests with the ALJ. [Id. at 5-6]. In addition, the Commissioner argues that the ALJ gave the appropriate weight to Dr. Alexander's and Ms. White's opinions. [Id. at 6-7]. Further, the Commissioner argues that "the ALJ properly performed her duty as trier of fact in resolving the conflicts in the evidence," and her decision is supported by substantial evidence. [Id. at 9].

## V.     ANALYSIS

The Court will address each of the Plaintiff's arguments in turn.

## A.     Tracy Allred, Ed.D.

8

The Plaintiff argues that the ALJ does not properly acknowledge Dr. Allred's opinion. [Doc. 16 at 16]. The Plaintiff contends that although the ALJ purportedly adopted Dr. Allred's opinion, Dr. Allred indicated that the Plaintiff's mental limitations are "significantly limited," which, the Plaintiff argues, is contrary to the ALJ's findings. [Id.]. The Plaintiff asserts that Dr. Allred's finding of "significantly limited" equates to "marked" or possibly "extreme" limitations. [Id. at 19]. The Plaintiff argues that the ALJ's failure to explain why she did not adopt Dr. Allred's "more than moderate" limitations violates certain procedural requirements. [Id. at 20].

The Commissioner responds that Dr. Allred's assessment does not indicate that the Plaintiff has marked limitations in certain areas. [Doc. 18 at 5]. The Commissioner argues, "given Dr. Allred's clinical findings, substantial evidence supports the ALJ's mental RFC findings." [Id.]. Further, the Commissioner argues that as a one-time examining source, Dr. Allred's opinion is not entitled to the same deference as a treating source. [Id. at 5-6]. Finally, the Commissioner asserts that certain issues, such as whether the Plaintiff's impairments meet a listed impairment, the residual functional capacity ("RFC"), the application of vocational factors, and whether the Plaintiff is disabled, are reserved solely for the Commissioner. [Id. at 6].

On April 24, 2006, the Plaintiff saw Dr. Allred for a consultative examine. [Tr. 635-40]. Dr. Allred noted that the Plaintiff had logical thought processes and was fully alert with orientation to time, place, and person. [Tr. 637]. The Plaintiff was not able to complete simple calculations or recall any of the three-word recall tasks. [Tr. 637]. Dr. Allred noted that she has low average range intelligence but her judgment was good. [Tr. 637]. The Plaintiff told Dr. Allred that she had auditory hallucinations and that she is easily angered but often forgets why she becomes angry. [Tr. 637]. Dr. Allred noted that "delusions were not evident." [Tr. 637]. The Plaintiff reported that she is able to perform many tasks around the house without the help of

9

others, such as cooking, grocery shopping, laundry, driving, housecleaning, paying bills, and balancing the checkbook. [Tr. 638]. However, she also reported having a difficult time relating to other people. [Tr. 638]. Dr. Allred noted that her diagnostic impressions of the Plaintiff were major depressive disorder that is recurrent and severe with psychotic features, anxiety disorder, and provisional post-traumatic stress disorder ("PTSD").

Dr. Allred reported that the Plaintiff's work-related activities are limited as follows:

> A.      Ability to understand and remember is moderately limited due to auditory hallucinations as well as a probable posttraumatic stress disorder.
>
> B.      Ability to sustain concentration and persistence is *significantly limited* due to symptoms of depression and anxiety, and psychotic features as well as probable posttraumatic stress disorder.
>
> C.      Social interaction is *significantly limited* due to isolating behaviors. She is fearful of others and cannot relate with others outside of her home.
>
> D.      Ability to adapt and tolerate stresses associated with day-to-day activities is *significantly limited* at this time. This client is needed of further intervention. She is seen by her primary care physician but is fearful of going to counseling due to fear of losing her home. She has a history of being molested for several years. She is having a hard time dealing with this type of stress at home.

[Tr. 639-40] (emphasis added).

The ALJ opined that Dr. Allred's assessment "is more consistent with the overall medical evidence of record and the [Plaintiff's] longitudinal treatment history. It accommodates the [Plaintiff's] subjective allegations of difficulty with social interaction, concentration, and adaptability." [Tr. 30].[1] This discussion and the ALJ's determination as a whole indicate that the

---

[1] The ALJ adopted the reasoning of her prior decision issued on July 31, 2009. The ALJ stated that the prior decision "thoroughly explained" the medical and opinion evidence and that "[n]o

ALJ afforded significant weight to Dr. Allred's findings. She found that the "functional assessment of Dr. Allred . . . is accommodated by the residual functional capacity." [Tr. 30]. The ALJ further found that the Plaintiff was able to "retain[] the capacity to interact appropriately and communicate effectively with others" and concentrate on simple tasks. [Tr. 27]. Consistent with her social limitations, the ALJ's RFC finding allows the Plaintiff to avoid regular social interaction and elevated concentration levels. [Tr. 27]. In finding that the Plaintiff has the RFC to perform medium work, the ALJ held:

> [The Plaintiff] requires work where she does not deal with (in other words, where she has no interaction with) the public on a regular basis, and where she basically deals with as few people as possible; that is low stress, and is fairly repetitive, not requiring a great deal of concentration.

[Tr. 15]. This RFC is consistent with Dr. Allred's assessment that the Plaintiff has significant limitations in concentration and persistence, social interaction, and ability to adapt and tolerate stresses associated with day-to-day activities.[2] Accordingly, the Court finds that the ALJ properly acknowledged Dr. Allred's assessment and adopted her findings in determining the Plaintiff's RFC.

---

new opinions with regard to claimant's work-related functional limitations have been added." [Tr. 16-17].

[2] The Court notes that the ALJ does not use the "significantly limited" language found in Dr. Allred's assessment. Dr. Allred found that the Plaintiff was "significantly limited" in sustaining concentration and persistence, social interaction, and ability to adapt and tolerate stresses. [Tr. 639-40]. Consistent with Dr. Allred's designation, the ALJ concluded that the Plaintiff required work that has no interaction with the public, low stress, and little concentration. [Tr. 15]. To remand this case based upon differences in language would be an unnecessary waste of resources. See, e.g., Slick v. Comm'r of the Soc. Sec., 2009 WL 136890, *3 (E.D. Mich. 2009) (declining to elevate form over substance where a "remand would likely produce little more than an added sentence"); see also United States v. Jackson, 2000 WL 1290360, *2 (6th Cir. 2000) (A court "should decline to correct the error, particularly when a remand, correct in form but purposeless in substance, would involve the needless expenditure of judicial resources at the district court level.").

The Plaintiff also argues that the ALJ failed to explain why she did not adopt Dr. Allred's "more than moderate restrictions." [Doc. 16 at 20]. The Plaintiff contends that this error violates the procedural requirements of Section 404.1527(f)(2)(ii) and Social Security Rule 96-8p. [Id.].

The Court has already found that the ALJ adopted Dr. Allred's assessment. In addition, the ALJ's first opinion explicitly states that Dr. Allred opined that the Plaintiff "had significant limitations in her ability to concentrate, interact socially, and adapt." [Tr. 27]. During the Plaintiff's second hearing, the Plaintiff's attorney asked the ALJ how she interpreted Dr. Allred's "significantly limited" designation. [Tr. 936]. The ALJ replied that Dr. Allred's designation meant that the Plaintiff still had some abilities to engage in such actions but demonstrated "serious problems." [Tr. 937]. The ALJ explained:

> [The Plaintiff] should not be placed in a position where she's dealing with people any more than absolutely necessary. Very simple work which she doesn't have to concentrate and low stress work. . . . I was characterizing it as not extreme but serious [and] not mild but severe enough that it needs to be taken into consideration.

[Tr. 937-38]. The ALJ considered Dr. Allred's "significantly limited" designation to be a serious limitation. Accordingly, the Court finds that the Plaintiff's allegations that the ALJ erred by not properly acknowledging Dr. Allred's opinion and violating the procedures are not well-taken.

**B.     Alex Alexander, M.D.**

The Plaintiff concedes that Dr. Alexander's June 2007 opinion should not be given controlling deference because it concludes that the Plaintiff is unable to work. [Doc. 16 at 24]. However, the Plaintiff argues that the ALJ is required to consider his opinion and explain the opinion's weight in the decision pursuant to Section 404.1527(c). [Id.].

12

The Commissioner responds that Dr. Alexander's opinion was properly considered. [Doc. 18 at 6-7]. First, the Commissioner asserts that although Dr. Alexander is a treating physician, the ALJ is not bound by his opinions and that the final decision of whether the Plaintiff is disabled rests with the ALJ. [Id. at 7]. The Commissioner contends that the ALJ's decision to not afford weight to Dr. Alexander's June 2007 opinion is well-supported. [Id.].

In July of 2003, the Plaintiff began seeing primary care physician, Dr. Alexander. Dr. Alexander treated the Plaintiff's mental condition with psychotropic medications. [Tr. 748, 750]. On June 12, 2007, Dr. Alexander wrote:

> [The Plaintiff] suffers from several chronic health problems including persistent anxiety and depression and probable bipolar disorder. She is receiving ongoing treatment for these problems and has requested a letter as part of her disability application process. She is unable to maintain gainful employment at this time and it is unknown if she will ever be able to work in a full time capacity.

[Tr. 422].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case record, it must be given controlling weight. 20 C.F.R.§§ 404.1527(c)(2) and 416.927(c)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R.§§ 404.1527(c)(2) and 416.927(c)(2).

13

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996). Nonetheless, the ultimate decision of disability rests with the ALJ. King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).

In this case, the ALJ explained, in detail, her decision not to afford weight to Dr. Alexander's June 2007 conclusory statements that the Plaintiff was completely disabled from working. [Tr. 30]. The ALJ reasoned that the "assessment [was] entirely inconsistent with Dr. Alexander's benign clinical examinations and conservative treatment" of the Plaintiff. [Tr. 30]. The ALJ stated that "Dr. Alexander's clinical exams did not reveal any significant signs of mental stress or severe deficit of judgment, insight, memory, or concentration" and that he treated the Plaintiff's "mental health issues conservatively with mild psychotropic medications." [Tr. 26]. Further, the ALJ stated that his assessment was "[in]consistent with the [Plaintiff's] reported activities." [Tr. 30].

The ALJ found:

> The [Plaintiff's] reported daily and social activities are not suggestive of a totally disabled individual. In March and December 2006, and in April 2008, the [Plaintiff] reported that she performed household chores such as vacuuming, dusting, washing dishes, and doing laundry. She also reported that she cooked, cared for her young son, cared for her pets, shopped, manage[d] . . . finances, watched television programs, and used her computer. . . . In April 2006, the [Plaintiff] reported to the psychological consultative

14

examiner that she cooked, cleaned her home, drove, shopped for groceries, did laundry, used her computer, and manage[d] her finances. . . . At the hearing, the [Plaintiff] testified that she cares for her son, visits her friend, and [h]as household chores. She also testified that she enjoys reading and doing arts and crafts. She admitted that she requires no assistance in caring for her six-year-old son.

[Tr. 30].

As noted above, a treating physician's opinion as to the nature and severity of an impairment is entitled to controlling evidence when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). The Court finds that the ALJ's conclusion that Dr. Alexander's "clinical exams did not reveal any significant signs of mental distress or severe deficits of judgment, insight, memory, or concentration" is supported by substantial evidence. [Tr. 26]. In Dr. Alexander's June 2007 opinion, he mentions that the Plaintiff has persistent anxiety, depression, and probable bipolar disorder. [Tr. 639-40]. He then concludes she cannot work. [Tr. 639-40]. He does not explain or provide any detail on how or why he came to this conclusion. In addition, as the ALJ noted, his conclusion is inconsistent with the Plaintiff's daily activities. [Tr. 30]. The record indicates that although the Plaintiff complained of emotional difficulties on several occasions, a majority of her appointments with Dr. Alexander focused on her physical problems and refilling her medications. [Tr. 740-753, 322, 334, 328, 483-486, 488-499]. Based on the foregoing, the Court finds that the ALJ did not err in concluding that Dr. Alexander's June 2007 opinion was entitled to no weight.

When a treating physician's opinion is not entitled to controlling weight, the ALJ must, nonetheless, weigh the opinion pursuant to 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2), to determine if the opinion is entitled to some weight in the decision-making process. In this case,

the ALJ found that Dr. Alexander's June 2007 opinion was entitled to no weight. The ALJ noted that Dr. Alexander had treated the Plaintiff since 2003. [Tr. 26]. This factor weighs in the Plaintiff's favor. However, the ALJ found that the June 2007 opinion was "entirely inconsistent with Dr. Alexander's benign clinical examinations and conservative treatment" of the Plaintiff. [Tr. 30]. Further, the ALJ found that his assessment was inconsistent with Plaintiff's daily activities. [Tr. 30]. The ALJ also noted that "Dr. Alexander is not a mental health professional and his clinical exams revealed no significant signs of affective distress or severe deficits of concentration, memory, adaptability, or social skills." [Tr. 30]. The ALJ stated that Dr. Alexander reported that the Plaintiff's anxiety was stable as long as she was on the correct medication. [Tr. 17].

The ALJ's findings are consistent with the record. For example, in 2006, the Plaintiff completed a "Function Report" in which she claimed she has friends who come and see her and that she "talk[s] on the phone a lot!" [Tr. 218] (emphasis in the original). The Plaintiff reported to Dr. Allred that her daily activities include cooking, grocery shopping, driving, doing laundry, housecleaning, paying bills, and balancing her checkbook. [Tr. 638]. The Plaintiff also reported that she does these activities "without help from others." [Tr. 638]. The Plaintiff told Dr. Allred that her hobbies include reading and using the computer. [Tr. 638]. Further, Dr. Alexander's notes state that the Plaintiff indicated that she does better with the medicine. [Tr. 494]. In addition, Dr. Alexander reported on May 26, 2009 that the Plaintiff was "stable as long as she is on her meds." [Tr. 329].

Moreover, as the Plaintiff concedes, Dr. Alexander's June 2007 opinion cannot receive controlling deference. Dr. Alexander concluded that the Plaintiff is "unable to maintain gainful employment at this time[,] and it is unknown if she will ever be able to work in a full time

capacity." [Tr. 422]. The regulations provide that the issue of disability is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); see also White v. Comm'r of Soc. Sec., 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements from physicians are properly discounted by ALJs); Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (stating that ALJs are "not bound by conclusory statements of doctors"). Therefore, Dr. Alexander's conclusion is not controlling.

Accordingly, the Court finds that the ALJ properly weighed the applicable statutory factors to determine that Dr. Alexander's June 2007 opinion was entitled to no weight. See 20 C.F.R. §§ 404.1527(d) and 416.927(d). The Court finds that the ALJ explained the basis for affording no weight to the treating physician's opinion and gave good reasons for her decision. In addition, the Court finds that Dr. Alexander's conclusion that the Plaintiff is unable to work is not controlling.

## C.    Lynn White, L.C.S.W.

The Plaintiff argues that the ALJ must consider and explain the weight given to Ms. White's opinions. The Plaintiff concedes, however, that Ms. White's opinions cannot receive controlling deference because she is not an acceptable medical source.

The Commissioner argues that the ALJ properly rejected Ms. White's opinions. [Id. at 8]. The Commissioner asserts that Ms. White is not an acceptable medical source and her opinions are not entitled to any special weight. [Id.]. Finally, the Commissioner maintains that although the ALJ was not required to consider Ms. White's opinions, she did in fact do so and found that it was not entitled to any weight. [Id.].

Ms. White, a licensed clinical social worker at Ridgeview Psychiatric Hospital ("Ridgeview"), saw the Plaintiff over the course of a year. On October 15, 2007, Ms. White conducted a clinically related group ("CRG") assessment. Ms. White noted "marked" limitations in activities of daily living, interpersonal functioning, and adapting to change. [Tr. 409-10]. Ms. White explained that the Plaintiff has an explosive temper, avoids public places, and has poor coping skills. [Tr. 409-10]. Ms. White also noted that the Plaintiff was supposed to attend court for spraying a neighbor with a hose. [Tr. 409]. Ms. White noted "moderate" limitations in concentration, task performance, and pace. [Tr. 410]. She labeled the Plaintiff as a person with severe and persistent mental illness. [Tr. 411]. Ms. White recommended both individual and group therapy. [Tr. 404].

Although missing a number of appointments, the Plaintiff attended group and individual therapy with Ms. White. [Tr. 392-400; 413-19]. On June 25, 2008, Ms. White completed a Treating Relationship Inquiry. Ms. White opined that the Plaintiff could not work a forty (40) hour week, week after week, because she has a difficult time controlling her mood. [Tr. 423]. Ms. White noted that the Plaintiff was "poor" in all areas, except maintaining personal appearance.[3] [Tr. 424-25]. She opined that the Plaintiff was able to manage benefits in her own best interest, but the Plaintiff "has extreme low tolerance for stress." [Tr. 426].

---

[3] The areas include: activities of daily living independently, social functioning, concentration persistence and pace, adapting to stressful circumstances in work or work-like settings, understanding, remembering and carrying out complex instructions, understanding and remembering instructions that are not complex, understanding and remembering simple instructions, behaving in an emotionally stable manner, relating predictably in social situations, following work rules, dealing with the public, dealing with stress of ordinary work, demonstrating reliability, persistence at assigned tasks, ability to relate to peers, ability to relate to supervisors and co-workers, working at a consistent pace for acceptable periods of time, ability to complete tasks commonly found in work settings, using judgment, maintaining attention, and ability to be aware of hazards. [Tr. 424-25].

Under the Social Security regulations, licensed clinical social workers are not considered "acceptable medical sources" that can provide evidence to establish the existence of a medically determinable impairment. See 20 C.F.R. §§ 404.1513(a), 416.913(a); Bonnell v. Astrue, 650 F. Supp. 2d 948, 958 (D. Neb. 2009) (stating that licensed clinical social workers are not acceptable medical sources). A licensed clinical social worker's opinion is not entitled to special weight. See 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) ("Medical opinions are statements from physicians and psychologists or other *acceptable* medical sources . . ..") (emphasis added). However, as "other medical sources," a licensed clinical social worker's opinion is "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." Soc. Sec. Rul. 06-03p, 2006 WL 2329938, *3 (Aug. 9, 2006).

The Court finds that the ALJ properly considered Ms. White's opinions. Although not an acceptable medical source entitled to special weight, the ALJ evaluated Ms. White's opinions and found her opinions were entitled to no weight. [Tr. 30]. The ALJ reasoned that Ms. White's assessments were "inconsistent with the [Plaintiff's] benign clinical exams, conservative treatment, and reported daily and social activities." [Tr. 30]. The ALJ described the Plaintiff's daily activities and found them inconsistent with Ms. White's findings. [Tr. 30]. In addition, the ALJ stated that Ms. White's assessments "do not differentiate or explain the effects of the [Plaintiff's] admitted alcohol and drug use on her function." [Tr. 30]. The ALJ noted that although the Plaintiff stated during the first hearing that she had not used marijuana in over a year, "the record indicates that that she regularly used marijuana and alcohol through at least August 2006." [Tr. 30].

The records are consistent with the ALJ's finding. For instance, the records from Peninsula Hospital on January 24, 2006, indicate that the Plaintiff's "urine screen was reported positive for benzodiazepine and cannabis." [Tr. 649]. While at Peninsula Hospital, she reported that she had occasionally smoked marijuana and had since her teenager years. [Tr. 649]. In 2007, the Plaintiff again tested positive for marijuana. [Tr. 509]. A urine drug screen taken at Ridgeview in December 2009 was also positive for cannabinoids. [Tr. 274]. In addition, at the second hearing in 2010, the Plaintiff reported using marijuana over a year ago. [Tr. 931]. Further, the Plaintiff admitted occasional alcohol use. [Tr. 743]. Accordingly, the Court finds that the ALJ properly evaluated Ms. White's opinions and explained her reasoning for giving them no weight.

**(D)      Substantial Evidence in the Record**

Finally, the Plaintiff contends that the ALJ's factual findings "contrast[] with the actual record." [Doc. 16 at 22]. The Commissioner responds that the ALJ "properly performed her duty as trier of fact in resolving the conflicts in evidence." [Doc. 18 at 9]. In addition, the Commissioner argues that the Plaintiff "cites some isolated instances of abnormal behavior" and misunderstands the evidence. [Id. 8-9].

As mentioned above, when reviewing the Commissioner's determination of disability, the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley, 581 F.3d at 405 (citing Key, 109 F.3d at 273). If the ALJ applied the correct legal standards and her findings are supported by substantial evidence in the record, her decision is conclusive and must be affirmed. Warner, 375 F.3d at 390. It is immaterial whether the reviewing judge would have decided the

case differently. Crisp, 790 F.2d at 453 n.4. Moreover, the Court may not "resolve conflicts in evidence, nor decide questions of credibility." Walter, 127 F.3d at 528.

The Court finds that there is substantial evidence in the record to support the ALJ's RFC finding. Although there are inconsistencies in the record regarding the Plaintiff's abilities and mental health, the ALJ considered these inconsistencies and fashioned a residual functional capacity that allows Plaintiff to find a job that requires no public interaction, low stress, and that does not require a great deal of concentration. For example, the ALJ noted that the Plaintiff had "episodes of anger around others in public" and that the Plaintiff destroyed property at the Clinton Utilities Board. [Tr. 16]. However, the RFC accommodates this problem. In addition, as the ALJ noted, there is evidence in the record that on several occasions the Plaintiff denied suicidal ideation. [Tr. 380, 390, 743]. Further, although the Plaintiff claims she cannot clean on a reliable basis [Doc. 16 at 11], she reported to Dr. Allred that she could do the following activities without the help of anyone: cooking, grocery shopping, laundry, housecleaning, and managing her finances. [Tr. 638]. The Plaintiff also testified at the first hearing that she takes care of her son without the help of anyone. [Tr. 911].

Moreover, the Court should not "resolve conflicts in evidence." Gaffney, 825 F.2d at 100. The ALJ considered the conflicting evidence in the record but found that the RFC appropriately addressed the Plaintiff's problems.

In addition, the Plaintiff argues that it is "problematic" that the ALJ's decision emphasized the "Plaintiff's failure to receive formal mental health treatment." [Doc. 16 at 23]. At the first hearing, the Plaintiff "conceded that she has not required any mental health therapy since early 2008." [Tr. 29]. The ALJ thought it was notable that the Plaintiff "only reportedly began mental health treatment in August 2006 after she was arrested for vandalism and

21

disorderly conduct and she was directed to seek anger management therapy in advance of her criminal court hearing." [Tr. 29]. The ALJ stated in her second decision:

> [The Plaintiff's] testimony that her mental health treatment was limited due to lack of insurance is not entirely consistent with treatment notes. For instance, when the [Plaintiff] was seen by a mental health clinician in September 2008, the treatment provider noted that the [Plaintiff] had TennCare insurance, but despite this, the [Plaintiff] denied having seen any providers for mental health treatment for several months. . . . In May 2009, Dr. Alexander . . . observed that the [Plaintiff's] anxiety was stable as long as she was on the prescribed medication.

[Tr. 17]. The ALJ continued that the Plaintiff "does not appear to have received any formal mental health treatment after September 2008, until December 2009, when she received inpatient treatment for five to six days, during which her medication regimen was adjusted." [Tr. 17].

In White v. Comm'r of Soc. Sec., the court stated:

> We recognize that ALJs must be careful not to assume that a patient's failure to receive mental-health treatment evidences a tranquil mental state. For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself. But in this case there is no evidence in the record explaining [the Plaintiff's] failure to seek treatment during this half-year gap. A "reasonable mind" might therefore find that the lack of treatment . . . indicated an alleviation of [the Plaintiff's] symptoms.

572 F.3d 272, 283-84 (6th Cir. 2009) (internal citations omitted). Although the evidence indicates that the Plaintiff disliked Ridgeview, there is no evidence indicating why the Plaintiff did not seek treatment from other facilities. Dr. Alexander only noted that the Plaintiff "stopped going to Ridgeview," but he did not explain why. [Tr. 341]. The Plaintiff indicated that she was making arrangements with the Helen Ross McNabb Center, but she did not explain whether she sought treatment there. [Tr. 101]. During the first hearing, the ALJ asked the Plaintiff why she did not attend many of her appointments at Ridgeview. [Tr. 906]. The Plaintiff testified that she

would often forget her appointments or she did not feel like going and would "call in sometimes." [Tr. 906].

The Court finds that a "reasonable mind" might find that the Plaintiff did not seek treatment because her symptoms were under control while taking the correct medications and not because her mental health problems contributed to the lack of treatment. See White, 572 F.2d at 284. Accordingly, the Court finds that there is substantial evidence to support the findings of the ALJ.

## VI.    CONCLUSION

The Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff is capable of performing medium work with certain enumerated restrictions. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[4] that the Plaintiff's Motion for Judgment on the Pleadings [**Doc. 15**] be **DENIED**, and that the Commissioner's Motion for Summary Judgment [**Doc. 17**] be **GRANTED**.

Respectfully submitted,

            s/ C. Clifford Shirley, Jr.
            United States Magistrate Judge

---

[4]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party.  Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985).  The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general.  Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  Smith v. Detroit Fed'n of Teachers, 829 F.2d 1370 (6th Cir. 1987).